**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SOLOMON TECHNOLOGY SOLUTIONS, INC., a corporation, ALEX
SOLOMON AND MARVALYN JAN SOLOMON, both Individuals, MORGAN
HOAGLIN, an individual, DANIEL ZUBEY, an individual and DOES 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ADCOM TECHNOLOGIES, LLC, a Nevada Limited Liability Company

ENDORSED

2014 DEC -8 A 8: 36

S. ACKARD

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: (El nombre y dirección de la corte es): SANTA CLARA COUNTY SUPERIOR COURT 191 N. First Street San Jose, CA 95113 | | CASE NUMBER: (Número del Caso): 114CV274134 |
|---|---|---|

DAVID H. YAMASAKI
Chief Executive Officer, Clerk

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gregory P. O'Hara  131963 (SBN ); Jeffrey J. Lokey (SBN 200825)     PH: 650-320-7700 Fax: 650-320-7701
Nixon Peabody LLP
2 Palo Alto Square, 3000 El Camino Real, Ste. 500, Palo Alto, CA  4306

| DATE: December 4, 2014 DEC 0 8 2014 (Fecha) | Clerk, by S. ACKARD (Secretario) | , Deputy (Adjunto) |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | American LegalNet, Inc. www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|---|




**CIVIL LAWSUIT NOTICE**
*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

ATTACHMENT CV-5012

CASE NUMBER: **114CV274134**

## PLEASE READ THIS ENTIRE FORM

***PLAINTIFF*** (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

***DEFENDANT*** (The person sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint*, using the proper legal form or format, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.**

---

***RULES AND FORMS:*** You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

***CASE MANAGEMENT CONFERENCE (CMC):*** You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

**You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.**

---

Your Case Management Judge is: **Carol Overton**    Department: **5**

The 1st CMC is scheduled for: (Completed by Clerk of Court)
Date: **APR 07 2015** . Time: **3:45pm** In Department: **5**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
Date: _____ Time: _____ In Department: _____ .

---

***ALTERNATIVE DISPUTE RESOLUTION (ADR):*** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

***WARNING:*** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*
ADR can have a number of advantages over litigation:

* **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

* **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

* **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

* **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

* **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
* The parties want a non-adversary procedure
* The parties have a continuing business or personal relationship
* Communication problems are interfering with a resolution
* There is an emotional element involved
* The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
* The parties are far apart in their view of the law or value of the case
* The case involves a technical issue in which the evaluator has expertise
* Case planning assistance would be helpful and would save legal fees and costs
* The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET**
**CIVIL DIVISION**



# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*
Mediation is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

Neutral evaluation, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Gregory P. O'Hara (SBN 131963) / Jeffrey J. Lokey (SBN 200825)
Nixon Peabody LLP
2 Palo Alto Square, 3000 El Camino Real, Ste. 500
Palo Alto, CA 94306
TELEPHONE NO.: 650-320-7700    FAX NO.: 650-320-7701
ATTORNEY FOR *(Name):* Plaintiff, AdCom Technologies, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

CASE NAME:
AdCom Technologies, LLC v. SOLOMON TECHNOLOGY, et al.

FOR COURT USE ONLY

*(stamp)* 2014 DEC -8  A 8: 36

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 114CV274134  JUDGE  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 8, 2014
Gregory P. O'Hara
*(TYPE OR PRINT NAME)*      *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov



1  GREGORY P. O'HARA, State Bar No. 131963
   gohara@nixonpeabody.com
2  JEFFREY J. LOKEY, State Bar No. 200825
   jlokey@nixonpeabody.com
3  RHYS W. CHEUNG, State Bar No. 228091
   rcheung@nixonpeabody.com
4  NIXON PEABODY LLP
   2 Palo Alto Square
5  3000 El Camino Real, Suite 500
   Palo Alto, CA 94306
6  Tel:  650-320-7700
   Fax:  650-320-7701
7
8  Attorneys for Plaintiff
   ADCOM TECHNOLOGIES LLC
9
10            SUPERIOR COURT OF THE STATE OF CALIFORNIA
11              IN AND FOR THE COUNTY OF SANTA CLARA
12
   ADCOM TECHNOLOGIES LLC, a Nevada        Case No. ___114CV274134___
13 Limited Liability Company,
14              Plaintiff,                  COMPLAINT FOR:
                                            1.  MISAPPROPRIATION OF TRADE
15 vs.                                          SECRETS,;
                                            2.  VIOLATIONS OF CAL. BUS. &
16 SOLOMON TECHNOLOGY SOLUTIONS,                PROF. CODE § 17200, ET SEQ.;
   INC., a corporation, ALEX SOLOMON        3.  TORTIOUS INTERFERENCE;
17 AND MARVALYN JAN SOLOMON, both          4.  BREACH OF FIDUCIARY DUTY;
   individuals,  MORGAN  HOAGLIN,  an       5.  BREACH OF CONTRACT;
18 individual, DANIEL ZUBEY, an individual, 6.  BREACH OF IMPLIED
   AND DOES 1 THROUGH 10,                       COVENANT OF GOOD FAITH
19                                              AND FAIR DEALING;
                                            7.  TRADEMARK INFRINGEMENT;
20              Defendants.                  8.  TRADE DRESS INFRINGEMENT;
                                            9.  VIOLATION OF THE
21                                              COMPUTER FRAUD AND ABUSE
                                               ACT, 18 U.S.C. §1030, ET SEQ.
22
                                            DEMAND FOR JURY TRIAL
23
24      Plaintiff ADCOM TECHNOLOGIES LLC ("Plaintiff" or "ADCOM") alleges the

25 following claims against Defendants SOLOMON TECHNOLOGY SOLUTIONS, INC.

26 ("STS"), ALEX SOLOMON and MARVALYN JAN SOLOMON (also known as Jan

27 Solomon), both individuals, MORGAN HOAGLIN, an individual, and DANIEL ZUBEY, an

28 individual (collectively "Defendants"):

                                    - 1 -
                                  COMPLAINT

1

## PRELIMINARY STATEMENT

2    1.    Plaintiff ADCOM is in the business of developing the STACS® emergency

3    wireless communication system, a wireless and portable system providing local, state and

4    federal agencies on-demand internet, phone and radio connectivity from anywhere, worldwide,

5    using satellite, cellular and radio signals.  Plaintiff ADCOM brings this action for trademark

6    infringement, trade dress infringement, false designation of origin, breach of contract,

7    misappropriation of trade secrets, breach of fiduciary duty, unfair competition under California

8    Business and Professions Code § 17200, *et seq.*, breach of the implied covenant of good faith

9    and fair dealing, tortious interference with prospective economic advantage, and violation of the

10   Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.*  Defendants entered into an

11   agreement with Plaintiff ADCOM to be the exclusive licensee and reseller of the STACS

12   systems and services, and also to be a member of ADCOM, then conspired to misappropriate

13   Plaintiff's proprietary trade secrets after termination of the license and reseller agreement with

14   ADCOM by continuing to use ADCOM's proprietary firmware, refusing to relinquish

15   ADCOM's STACS units systems in their possession, accessing without authorization the

16   protected computing system within the STACS units systems to obtain its valuable

17   configuration information and to damage the device by modifying its configuration, attempting

18   to sell the ADCOM property, interfering and disrupting ADCOM's client relationships by

19   attempting to redirect the communications of existing STACS units previously sold to

20   ADCOM's existing clients to communicate with Defendants' systems, interfering with

21   ADCOM's business relationships with STACS® customers by intentionally copying the design

22   and operation of STACS® systems to create copied systems to market and to sell to ADCOM's

23   existing or prospective customers, and creating alter ego limited liability companies to sell the

24   copied systems to ADCOM's prospective customers for illicit financial gain to the detriment of

25   ADCOM.  In addition, Jan Solomon, a member of ADCOM, breached her fiduciary duties to

26   ADCOM by allowing Defendant Alex Solomon, who was de facto member of ADCOM and

27   proxy for his wife Ms. Solomon, to conduct wrongful acts against ADCOM during the relevant

28   time period.

2.     As a result of Defendants' wrongful actions, Plaintiff ADCOM has been, and continues to be, irreparably damaged in an amount to be determined at trial.

### PARTIES

3.     Plaintiff is and at all times mentioned herein was a Nevada limited liability company and maintains its principal place of business in Los Altos Hills, California.

4.     Plaintiff is informed and believes that Defendant SOLOMON TECHNOLOGY SOLUTIONS, INC., is and, at all times relevant was, a corporation with a place of business in Scottsdale, Arizona.

5.     Plaintiff is informed and believes that Defendants ALEX SOLOMON ("Mr. Solomon") and MARVALYN JAN SOLOMON (also known as "Jan Solomon" and referred to as "Ms. Solomon") (together "the Individual Defendants") are individuals residing in Arizona. Defendant Alex Solomon is the President of STS and, at all times relevant to the claims herein, held 1,000 shares of common stock in STS. Mr. Solomon's wife, Defendant Jan Solomon, also held 1,000 shares of common stock in STS at all times relevant to the claims herein. Defendant Jan Solomon holds a 25% membership interest in ADCOM, and as Ms. Solomon's proxy, Defendant Alex Solomon is a de facto member of ADCOM in place of Ms. Solomon.

6.     Plaintiff is informed and believes that Defendant MORGAN HOAGLIN is an individual residing in Arizona, and has been an employee of Defendants STS from July 2011 to the present.

7.     Plaintiff is informed and believes that Defendant DANIEL ZUBEY is an individual residing in Arizona, and has been working for Defendants STS as an employee or an independent contractor since around October 2014.

8.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things alleged herein, was acting within the scope of such agency. Plaintiff is further informed and believes, and on that basis alleges, that the conduct of each of the Defendants as alleged herein was ratified by each of the other Defendants and the benefits thereof were accepted by each Defendant.

- 3 -

9.      Plaintiff is informed and believes, and on that basis alleges that it is therefore appropriate and just to treat all Defendants as the same and hold them all liable for each other's wrongdoing.

### JURISDICTION AND VENUE

10.     Venue in this Court is proper under California Code of Civil Procedure sections 395.5 because Plaintiff and Defendant STS entered into a contract ("Preferred Reseller and Licensing Agreement" or "Reseller Agreement") to be performed, and where payment was due, in the County of Santa Clara, State of California, within the jurisdiction and venue of this Court, Defendants actively solicit and performs infringing activities in the state of California, and Defendants Alex and Jan Solomon are de facto and actual members, respectively, of Plaintiff ADCOM, which has its principal place of business in the County of Santa Clara, State of California.

11.     Jurisdiction in the state of California is proper because this court has jurisdiction over the claims of this action, including concurrent jurisdiction over the claims arising under the Lanham Act, 15 U.S.C. § 1117, et seq., and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.

12.     Jurisdiction in the state of California is proper because Defendants have made or established constitutionally sufficient contacts in the state of California to permit this Court's exercise of personal jurisdiction and/or Defendants have purposefully availed themselves to the benefits and protections of the state of California by engaging in business transactions with and participating or de facto in Plaintiff, a limited liability company with its principal place of business in California to permit this Court's exercise of personal jurisdiction.

13.     The amount in controversy herein exceeds $25,000 and thus this matter is properly designated as a case of unlimited jurisdiction.

### GENERAL ALLEGATIONS

14.     ADCOM is a closely-held limited liability company founded by Ronald Cioffi and Defendant Alex Solomon, and currently has as its members: Ronald Cioffi (75%) and Defendant Jan Solomon (25%). Defendant Alex Solomon acts as Jan Solomon's proxy in all

- 4 -

1   aspects relating to member privileges, and has a relationship with ADCOM as the de facto
2   owner of Jan Solomon's membership interest.

3       15.    In or around 2007, ADCOM developed and began to sell the STACS®
4   emergency wireless communication system.  STACS® is an acronym for Smart Tactical
5   Advanced Communication System. A STACS® system includes both a STACS® portable unit,
6   and the use of ADCOM STACS® head-end server with which the STACS® unit communicates
7   to achieve voice telecommunications and internet connectivity.  The portable system can be
8   deployed wirelessly anywhere, worldwide, and provides on-demand internet, phone, and other
9   communication connections using satellite, cellular and radio signals.  Other devices can be
10  coupled to a STACS® unit for providing internet, phone and radio connectivity to those
11  devices.  The system is particularly useful to responders of emergencies and natural disasters
12  when local or regional communication infrastructure is inoperable or unavailable.

13      16.    ADCOM designed the STACS® hardware unit, developed and owns the
14  firmware for provisioning the STACS® unit, and maintains the secure STACS® head-end
15  server computer and private network for receiving and transmitting communications to and
16  from STACS® units.  ADCOM provides maintenance and support services for STACS®
17  customers.

18      17.    ADCOM is the owner of U.S. Patent and Trademark Registration No. 3,741,650
19  for STACS®, filed July 25, 2008, and registered on January 26, 2010, for "Contingency
20  response communication system designed to provide radio interoperability, streaming video,
21  wireless internet, and VOIP phone; Interoperable communication system designed to provide
22  radio, streaming video, wireless internet, and VOIP phone; Satellite and microwave
23  communications apparatus to transmit communications from a vehicle to another vehicle, or
24  from a vehicle to a satellite; Telecommunications and data networking hardware, namely,
25  devices for transporting and aggregating voice, data, and video communications across multiple
26  network infrastructures and communications protocols."

27      18.    ADCOM has developed and protected the secrecy of valuable trade secrets vital
28  to the success of its business.  ADCOM's trade secrets are unknown to the public because

-5-

1  ADCOM has protected its trade secrets through contract, by requiring confidentiality
2  agreements with STS, which impose obligations to protect ADCOM's trade secrets from
3  improper use and disclosure. ADCOM's trade secrets include STACS® product design,
4  STACS® firmware, system configuration, and technology, contract terms and conditions of
5  service, its business model and pricing, its marketing strategies, and operational and technical
6  data and know-how for provisioning and deploying the STACS® devices. The trade secrets of
7  ADCOM were developed over four years and costing at least $2 million in research and
8  development.

9      19.    Plaintiff alleges that all of the foregoing trade secrets were misappropriated and
10 used by Defendants in the operation and formation of a business enterprise to compete with the
11 Plaintiff, in breach of contract and in breach of its obligations to the Plaintiff. It is the
12 misappropriation of Plaintiff's trade secrets that enabled Defendants to effortlessly establish a
13 business and offer a competing product for sale. It is the trade secrets that allow Defendants to
14 commercialize and market the products they sell. It is Plaintiff's know-how, carefully guarded
15 by Plaintiff, that Defendants have misappropriated for their own gain.

16     20.    Plaintiff is informed and believes, and on that basis alleges that prior to entering
17 into the Reseller Agreement and becoming a shareholder in ADCOM, Defendants had not
18 researched or developed any emergency communications systems.

19     21.    In 2007, ADCOM granted STS the right to be an exclusive reseller/distributor
20 and licensee in the STACS® system and services under a Reseller Agreement, which was a
21 significant investment in STS by ADCOM at the sacrifice of other distribution channel
22 opportunities. Under the Reseller Agreement, STS would pay and be reimbursed for expenses
23 relating to any component costs, and for sales and marketing of the STACS® units. At the time
24 of sale, STS would receive payment from a customer, and withhold 25% of the sales revenue
25 from every STACS® system sold. ADCOM would invoice STS for the remaining sum. Before
26 payment of the ADCOM invoice, STS would deduct any outstanding reimbursable STACS®
27 expenses, then pay to ADCOM the balance from the invoice as a licensing fee for the STACS®
28 device. Under the Reseller Agreement, STS agreed to use its resources to solicit, support, and

- 6 -
COMPLAINT

1   respond to potential market and customer opportunities on behalf of ADCOM.   STS was
2   granted a license by STS to use the STACS® technology to enhance STS's business interests
3   with existing and registered customers.   A true and correct copy of a letter from ADCOM
4   Manager Ronald Cioffi to Defendant Alex Solomon, as President of STS, documenting the
5   Reseller Agreement is attached hereto as Exhibit A, and a true and correct copy of an
6   accounting according to and in support of the Reseller Agreement for sales as of June 6, 2009, is
7   attached hereto as Exhibit B.

8        22.    Plaintiff performed its obligations under the Reseller Agreement by providing
9   provisioned STACS® systems for sale by STS to customers, maintaining the STACS® head-
10  end server computer, and by paying STS 25% of the revenue from each sale, paying
11  reimbursable STACS® expenses that had accrued at the time of each sale.

12       23.    STS failed to meet its sales projections for STACS®.   STS had provided sales
13  projections for STACS® totaling about $14 million for the period between 2013 and 2014,
14  while only $60,000 in STACS® sales were completed by mid-2014 for that period.

15       24.    On April 9, 2014, ADCOM established Temporary Rules of Engagement (TRE)
16  with STS, changing STS's relationship from a reseller to a sales representative of STACS®
17  systems.   A true and copy of the TRE, and STS's acceptance of the TRE by e-mail reply from
18  Alex Solomon to ADCOM by way of STS employee Cecil Dyer, are attached hereto as Exhibit
19  C.   Previously, under the Reseller Agreement, STS sold STACS® systems to customers, and
20  received payment directly from customers.   Under the TRE, STS would be a representative for
21  ADCOM in its sales of STACS® systems, and would be paid a 25% commission for each sale.

22       25.    In August of 2014, STS terminated its relationship with ADCOM.   At that time,
23  STS was required to return and all ADCOM property in its possession, including proprietary
24  STACS® firmware images, proprietary STACS® materials, STACS® demonstration systems
25  and information stored thereon, and information about STACS® customers, all of which
26  constituted proprietary information or trade secrets of ADCOM.   A true and correct copy of an
27  e-mail sent from Dean Franks to Defendant STS via Defendant Morgan Hoaglin comprising
28  ADCOM's formal notification of termination of the Reseller Agreement, and a request to STS

- 7 -

1  to destroy STACS® firmware images, is attached hereto as Exhibit D.  STS was required to

2  cease use of all confidential, proprietary and trade secret business information relating to

3  STACS®, including returning or destroying all copies of STACS® firmware images, and

4  ceasing use of all STACS passwords which Defendants have in its possession. STS has refused

5  to return or destroy copies of STACS® firmware images, and has refused to return STACS®

6  demonstration systems.

7      26.    Dean Franks, a former member of ADCOM, was the developer of the STACS®

8  system for ADCOM.  In or around 2011, STS employed Franks as STACS® Program Engineer

9  to assist in STACS® sales support for STS, including assembling STACS® demonstration units

10  and provide pre-sales support for STACS®.

11      27.    Defendant Morgan Hoaglin began working for STS in or around June 2011 as

12  STACS® Public Safety Project Engineer.  Hoaglin's initial duties were to manage the

13  development of the Public Safety business segment.

14      28.    Defendant Morgan Hoaglin reported to Dean Franks.  Franks trained Hoaglin in

15  confidence to assemble a STACS® unit, and provided to Hoaglin in confidence access to

16  ADCOM's proprietary technical information relating to the deployment of the STACS® system

17  in order to support sales of STACS®.  Hoaglin assembled STACS® units only at the direction

18  of Dean Franks, and with components, tools and equipment owned by ADCOM.

19      29.    In his employment with STS, Franks also provided services unrelated to

20  STACS®, including general information technology support for the company, limited technical

21  support for STS's information technology support contracts.  Franks did not design or develop

22  any STACS® technology on behalf of STS.  Frank's employment at STS terminated in May

23  2014.

24      30.    On information and belief, in August 2014, Defendant Alex Solomon took first

25  steps at forming an alter ego company Solomon Communication Systems LLC to compete

26  against ADCOM. A true and correct copy of the record of the name reservation as submitted to

27  the Arizona Corporation Commission is attached hereto as Exhibit E.

28      31.    On information and belief, and on that basis, Plaintiff alleges that Defendants

- 8 -

COMPLAINT

1    Morgan Hoaglin and Daniel Zubey, with knowledge and consent of all Defendants, and in

2    furthering the conspiracy amongst them, used each of his knowledge of ADCOM's proprietary

3    information and trade secrets to copy and produce a competing emergency communications

4    system, called SCS700 in or around October 2014.

5        32.     On information and belief, and on that basis, Plaintiff alleges that Defendants

6    Morgan Hoaglin and Daniel Zubey, with knowledge and consent of all Defendants, and in

7    furthering the conspiracy amongst them, intentionally and without authorization accessed the

8    protected computing system within ADCOM's STACS® demonstration unit in order to obtain

9    configuration information from the device's system configuration files, and to damage the

10    device by modifying its configuration.  Plaintiff is informed and believes, and on that basis

11    alleges, that Defendants did so with the intent to copy and to test the obtained information to

12    produce the competing SCS700 emergency communications system.

13        33.     On information and belief, and on that basis, Plaintiff alleges that Defendants

14    Morgan Hoaglin and Daniel Zubey, with knowledge and consent of all Defendants, and in

15    furthering the conspiracy amongst them, each knowingly and intentionally used one of

16    ADCOM's STACS® units to access, without authorization, Plaintiff's protected head-end

17    server computer to make telephone calls to prospective customers, obtaining telephone service

18    from the computer.  Defendants Hoaglin and Zubey knowingly and intentionally caused the

19    SCS700 device to attempt unauthorized access to Plaintiff's protected head-end server

20    computer.  Plaintiff is informed and believes, and on that basis alleges, that Defendants did so

21    with the intent to interfere with Plaintiff's relationship with existing and prospective customers,

22    and to mislead Plaintiff's existing and prospective customers on the operability of Defendants'

23    alleged new SCS700 device.

24        34.     On information and belief, Defendants launched a website using the newly

25    registered domain name at http://solomoncomm.com ("the SCS website").  Defendants began

26    marketing and selling SCS700 on the SCS website by using and copying information about

27    ADCOM's STACS® system.  On information and belief, Defendants copied and modified a

28    digital rendering of a STACS® system, and used it on the SCS website without authorization.

- 9 -

1   Defendants replaced the STACS® mark on the digital rendering with the Defendants' label
2   "SCS700." Defendants posted STACS system performance history and customer history on the
3   SCS700 website, falsely claiming that it was SCS700's the performance history. For example,
4   Defendants have falsely represented in their website advertising that their system's technology
5   was approved by the Department of Homeland Security for border security and was also
6   deployed in support of Haiti relief efforts, when in fact it was the Plaintiff's STACS system that
7   was approved and deployed. Defendants copied the specification of ADCOM's STACS device
8   and posted it to the SCS website, replacing all occurrences of "STACS" to "SCS700." The SCS
9   website marketed SCS700 to ADCOM's prospective customers who were previously marketed
10   the STACS® system in direct competition with ADCOM.

11        35.    On information and belief, Defendants marketed the SCS700 as a STACS's
12   equivalent, when in fact it is, not. On information and belief, any SCS700 system that
13   Defendants may have developed is at best a poor, untested replica of ADCOM's STACS
14   system, if it is operational at all. The STACS communications network is relied upon by
15   existing STACS customers to provide emergency communications to emergency responders.
16   On information and belief, Defendants' unverified copy of ADCOM's technology poses a threat
17   to public safety because it has not be adequately tested and would be unreliable if used by
18   emergency responders.

19        36.    Defendant Alex Solomon, as de facto member of ADCOM, was given direct
20   access in confidence to ADCOM's trade secrets and other of ADCOM's confidential
21   information.   Mr. Solomon provided these trade secrets and confidential information to
22   Defendant STS and its alter ego Solomon Communication Systems, which was now operating
23   in open competition with ADCOM.

24        37.    Inconceivably, in a matter of months, Defendants were allegedly able to create
25   and market an emergency communications system that took ADCOM four years and at least $2
26   million in investment to create and to perfect. On information and belief, Plaintiff alleges that
27   Defendants were able to accomplish their development of the SCS700 by refusing to return a
28   STACS® demonstration unit, intentionally and without authorization gaining access to the

- 10 -

1   computing system within the STACS® demonstration unit to obtain, copy and damage its
2   configuration information, copying the design of the STACS® unit, and using without
3   authorization ADCOM's proprietary information and trade secrets obtained by Defendants Alex
4   Solomon and Morgan Hoaglin.

5       38.    On information and belief, Plaintiff alleges Defendants Alex Solomon and STS
6   misappropriated ADCOM's proprietary information and trade secrets relating to the identity of
7   ADCOM's vendors and suppliers.

8       39.    On information and belief, Defendants Alex Solomon and STS have contacted
9   ADCOM's vendors and suppliers under false pretenses to misappropriate ADCOM's
10  proprietary information and trade secrets, in order to develop Defendants' copy of Plaintiff's
11  STACS® unit and server.

12      40.    On information and belief, and on that basis, Plaintiff alleges that Defendants
13  continue to offer for sale to prospective ADCOM customers STACS® systems. A true and
14  correct copy of STACS® product listings by Solomon Technology Solutions, Inc., obtained
15  from https://www.gsaadvantage.gov/ on December 4, 2014, is attached hereto as Exhibit F.

16      41.    The STACS® unit has been advertised and sold with the STACS® mark
17  continuously, extensively and exclusively since at least 2007. As a result, the STACS® unit
18  design is well known to the industry and to customers, and is distinctive. Plaintiffs, therefore,
19  own protectable trade dress rights under the Lanham Act, and otherwise, for the STACS® unit.

20      42.    Images of ADCOM's STACS® unit and Defendants' alleged copy are shown
21  below.

- 11 -
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



ADCOM's STACS® unit

12
13
14
15
16
17
18
19
20
21
22
23



Defendants' alleged SCS700 unit

24      43.    On information and belief, Defendant STS breached the Reseller Agreement by

25   developing a competing product by misappropriating STACS® technology, including technical

26   information and firmware, and a STACS® demonstration unit, and by selling the competing

27   product against ADCOM's product.

28

1    44.    On information and belief, Plaintiff alleges Defendants actively seek out
2    prospective customers of ADCOM, unfairly and tortiously using ADCOM's own protected
3    technology in competition with ADCOM. On information and belief, Plaintiff alleges that
4    Defendants' image of SCS700 above is a computer-generating rendering of one of the original
5    STACS® designs owned by ADCOM, which has been used without authorization by
6    Defendants to falsely represent to prospective customers their ability to produce a lookalike
7    product based on the STACS® communications system. On information and belief, Defendants
8    have not used, successfully tested, deployed or sold any SCS700 systems or other emergency
9    communication system developed by Defendants.

10    45.    On information and belief, Defendants have and continue to engage in deceptive
11    behavior alleging in e-mails from Defendant Alex Solomon to existing and prospective
12    customers that STS can "provide STACS® but just can't call it STACS®," and instructing an
13    existing resale customer to "change the name" of a STACS® unit to obscure the device's
14    STACS® origin.

15    46.    On information and belief, Defendant Alex Solomon, in his efforts to sell an
16    SCS700 to existing or prospective domestic, international and U.S. government customers, used
17    and demonstrated to existing or prospective customers without authorization a STACS® unit
18    with the STACS® trademark removed from the unit to obscure the device's STACS® source.

19    47.    On information and belief, Defendants have used the name STACS® without
20    authorization and are infringing ADCOM's registered trademark.

21    48.    On information and belief, STS has attempted, without authorization, to modify
22    and reprovision a STACS® demonstration system currently being used by a reseller, instructing
23    that the customer send the STACS® demonstration unit to STS for reprovisioning to
24    communicate with STS's own private network. The STACS® demonstration unit cannot be
25    reprovisioned without unauthorized use of ADCOM's confidential, proprietary and trade secret
26    business information relating to STACS®.

27    49.    On information and belief, Defendants have interfered with sales of STACS® by
28    ADCOM, including but not limited to causing ADCOM to lose an endorsement for STACS®

- 13 -

1   by several affiliated partners and resulting in the potential loss of $5 million in projected

2   customer sales.

3       50.     Defendants used confidential, proprietary and trade secret business information

4   related to STACS® without authorization and for its own gain and benefit.

5       51.     Defendants refused and continue to refuse to return or destroy copies of

6   STACS® firmware images, and STACS® demonstration systems.

7       52.     Defendants have interfered with sales of STACS® by ADCOM.

8       53.     Defendants have copied without authorization the design of the STACS® unit.

9       54.     Defendants have used the name STACS® without authorization and are

10  infringing ADCOM's registered trademark.

11      55.     As a result of Defendants' actions, Plaintiff has suffered and continues to suffer

12  damages in an amount to be proven at trial.

13

14                          **FIRST CAUSE OF ACTION**

15              **(Misappropriation of Trade Secrets – Cal. Civil Code § 3426 *et seq*.)**

16      56.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this

17  Complaint.

18      57.     Plaintiff invested substantial time, money and skill in developing its proprietary

19  systems and methods and valuable trade secrets described herein.  Plaintiff's information shared

20  with Defendants is confidential and proprietary information not generally known to the industry,

21  to the public, or to others who can realize economic value from its disclosure or use.

22      58.     Plaintiff has acted to protect and maintain the secrecy of Plaintiff's trade secrets.

23  Defendants spent very little time and effort in converting those same trade secrets for their own

24  use.

25      59.     Defendants misappropriated Plaintiff's valuable trade secrets all at little or no

26  cost to the Defendants and for illicit personal financial gain.

27      60.     Defendants' misappropriation and use of Plaintiff's trade secrets was without the

28  knowledge, authorization or consent of Plaintiff.

- 14 -

1       61.   Without Plaintiff's knowledge or consent, Defendants profited from Plaintiff's

2   trade secrets to the detriment of Plaintiff through the commercialization and marketing of

3   SCS700, causing Plaintiff to lose profits and business opportunities.

4       62.   Defendants' acts were willful, in disregard of and with indifference to the rights

5   of Plaintiff.

6       63.   As a direct and proximate result of Defendants' conduct, Plaintiff has been

7   damaged and continues to be damaged in an amount to be proven at trial.

8       64.   As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to

9   damages and Defendants' profits in an amount to be proven at trial, and which are not currently

10  ascertainable. If necessary, Plaintiff will seek leave to amend this complaint to state the full

11  amount of such damages and profits when such amounts have been ascertained.

12      65.   Defendants committed the acts alleged herein with the wrongful and deliberate

13  intention of injuring Plaintiff's business and benefiting their common enterprise. In so doing,

14  Defendants acted with oppression, fraud, or malice. Accordingly, pursuant to California Civil

15  Code § 3294(a), Plaintiff is entitled to recover punitive and exemplary damages from

16  Defendants.

17      **WHEREFORE**, Plaintiff prays for judgment against Defendant as more fully set forth

18  below.

19  **SECOND CAUSE OF ACTION**

20  (Unfair Competition Cal. Bus. & Prof. Code § 17200, *et seq.*)

21      66.   Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this

22  Complaint.

23      67.   By the Defendant's tortious and injurious acts, Defendants have engaged in

24  unlawful, unfair or fraudulent business acts or practices in violation of California Business and

25  Professions Code, § 17200, et seq.

26      68.   Defendants' acts were willful, in disregard of and with indifference to the rights

27  of Plaintiff.

28      69.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered

- 15 -

1   and will continue to suffer substantial pecuniary losses and irreparable injury. Such injury will

2   continue unless Defendants are preliminary and permanently enjoined by this Court from

3   further committing unlawful and unfair business practices against Plaintiff.

4        70.    By reason of Defendants' wrongful acts, Plaintiff was, and will be in the future,

5   deprived of the profits and benefits of business relationships, agreements, and transactions with

6   clients and/or prospective clients and Defendant has wrongfully obtained such profits and

7   benefits in an amount to be determined at trial.

8        71.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to

9   damages and Defendants' profits in an amount to be proven at trial, and which are not currently

10  ascertainable. If necessary, Plaintiff will seek leave to amend this complaint to state the full

11  amount of such damages and profits when such amounts have been ascertained.

12       72.    Defendants committed the acts alleged herein with the wrongful and deliberate

13  intention of injuring Plaintiff's business and benefiting their common enterprise. In so doing,

14  Defendants acted with oppression, fraud, or malice. Accordingly, pursuant to California Civil

15  Code § 3294(a), Plaintiff is entitled to recover punitive and exemplary damages from

16  Defendants.

17       **WHEREFORE**, Plaintiff prays for judgment against the individual Defendants as more

18  fully set forth below.

19                              **THIRD CAUSE OF ACTION**

20              **(Tortious Intentional Interference with Prospective Economic Advantage)**

21       73.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this

22  Complaint.

23       74.    By the Defendant's tortious and injurious acts, Defendant have intentionally

24  interfered with and disrupted Plaintiff's prospective and current business relationships.

25       75.    Plaintiff had established economic relationships with numerous customers, and

26  were in the process of discussions to enter into relationships with prospective customers.

27       76.    With knowledge of the customers' relationship or prospective relationships with

28  Plaintiff, Defendants have intentionally acted to disrupt Plaintiff, resulting in the loss of profits

- 16 -

1   and business opportunities.

2       77.    Defendants' acts were willful, in disregard of and with indifference to the rights
3   of Plaintiff.

4       78.    As a direct and proximate result of Defendants' conduct, Plaintiff has been
5   damaged and continues to be damaged in an amount to be proven at trial.

6       79.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to
7   damages and Defendants' profits in an amount to be proven at trial, and which are not currently
8   ascertainable. If necessary, Plaintiff will seek leave to amend this complaint to state the full
9   amount of such damages and profits when such amounts have been ascertained.

10      80.    Defendants committed the acts alleged herein with the wrongful and deliberate
11   intention of injuring Plaintiff's business and benefiting their common enterprise. In so doing,
12   Defendants acted with oppression, fraud, or malice. Accordingly, pursuant to California Civil
13   Code § 3294(a), Plaintiff is entitled to recover punitive and exemplary damages from
14   Defendants.

15      **WHEREFORE**, Plaintiff prays for judgment against the individual Defendants as more
16   fully set forth below.

17                         **FOURTH CAUSE OF ACTION**

18              **(Breach of Written Contract Against Defendant STS)**

19      81.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this
20   Complaint.

21      82.    On or about June 28, 2007, Plaintiff and Defendant entered into an verbal
22   agreement, and a true and correct copy of a letter documenting the terms of the agreement is
23   attached hereto as Exhibit A and is made a part of this pleading.

24      83.    Plaintiff has performed all conditions, covenants, and promises required on its
25   part to be performed in accordance with the terms and conditions of the agreement.

26      84.    Upon such dates to be proven at trial, Defendants breached the agreement by,
27   among other things, disclosing confidential and proprietary information and trade secrets,
28   stealing, and converting Plaintiff's firmware images, proprietary processes and works for its

1  own use and financial gain.

2      85.     Upon such dates to be proven at trial, Defendants breached the contract by
3  creating derivative works from Plaintiff's system, by renaming the system "SCS700" and by
4  selling the infringing system in competition with ADCOM.

5      86.     Upon such dates to be proven at trial, Defendant Alex Solomon further breached
6  the contract by imparting to STS confidential information consisting of the proprietary trade
7  secrets of Plaintiff enabling Defendants to create SCS700.

8      87.     Defendants STS intentionally breached the Agreement, including the violation of
9  the non-disclosure and confidentiality provisions intended to protect ADCOM's trade secrets.

10     88.     As a result of Defendants' breach of the contract, Plaintiff has been damaged and
11  continues to be damaged in an amount to be proven at trial.

12     **WHEREFORE**, Plaintiff prays for judgment against the individual Defendants as more
13  fully set forth below.

14                        **FIFTH CAUSE OF ACTION**

15          **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

16     89.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this
17  Complaint.

18     90.     Every contract includes an implied covenant of good faith and fair dealing that
19  all parties will abide by the agreement and its conditions and that no party will injure the right
20  of the other to receive the benefits of the agreement.

21     91.     By refusing to relinquish ADCOM's STACS units systems in their possession,
22  accessing without authorization the protected computing system within the STACS units
23  systems to obtain its valuable configuration information and to damage the device by modifying
24  its configuration, attempting to sell the ADCOM property, interfering and disrupting ADCOM's
25  client relationships by attempting to redirect the communications of existing STACS units
26  previously sold to ADCOM's existing clients to communicate with Defendants' systems,
27  interfering with ADCOM's business relationships with STACS® customers by intentionally
28  copying the design and operation of STACS® systems to create copied systems to market and

                                    - 18 -

1  to sell to ADCOM's existing or prospective customers, falsely marketing their system as

2  equivalents of Plaintiff's STACS® systems, and creating alter ego limited liability companies to

3  sell the copied systems to ADCOM's prospective customers for illicit financial gain to the

4  detriment of ADCOM, Defendants are in breach of the covenant of good faith and fair dealing

5  implied in the Reseller Agreement.

6      92.    As a result of Defendants' breaches, ADCOM has suffered actual damage in an

7  amount according to proof at trial.

8                        **SIXTH CAUSE OF ACTION**

9              **(Trademark Infringement under 15 U.S.C. § 1114)**

10     93.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this

11  Complaint.

12     94.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

13     95.    ADCOM owns valid and enforceable registered trademarks for its STACS®

14  mark, U.S. Trademark Registration No. 3,741,650 (the "Mark.")

15     96.    Defendants have refused to comply with ADCOM's Resller and license

16  agreements specifying terms for the authorized use of the Mark.

17     97.    The activities of Defendants complained of herein constitute intentional

18  infringements of the Marks, because they are likely to cause confusion and mistake among

19  customers and the public, and to deceive the public into believing that Defendants and/or their

20  services are associated with, sponsored by, originated from, or are approved by ADCOM, when

21  in truth and fact they are not.

22     98.    Defendants' aforementioned acts are intentional and have injured ADCOM and

23  damaged ADCOM in an amount to be determined at trial. By their actions, Defendants have

24  irreparably injured ADCOM. Such irreparable injury will continue unless Defendants are

25  preliminarily and permanently enjoined by this Court from further violation of ADCOM's

26  rights, for which ADCOM has no adequate remedy at law.

27     **WHEREFORE**, Plaintiff prays for judgment against the individual Defendants as more

28  fully set forth below.

**SEVENTH CAUSE OF ACTION**

**(Trade dress infringement [Lanham Act])**

99.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this Complaint.

100.    Defendants' reproduction of the STACS® unit and use of Plaintiff's trade dress in the appearance of Defendants' SCS700 device constitutes trade dress infringement and unfair competition under the Lanham Act because such use is likely to cause confusion, mistake, and deception as to the origin of Defendants' SCS700, and is likely to mislead customers and prospective customers as to the source, affiliation, sponsorship or approval of Plaintiffs.

101.    On information and belief, Defendants' conduct has been and will continue to be willful, wanton and deliberate with full knowledge and awareness of Plaintiff's rights.

102.    As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged and continues to be damaged in an amount to be proven at trial.

103.    In light of the willful nature of Defendants' conduct, this case should be deemed "exceptional" under the Lanham Act. As a result, in addition to damages, Plaintiffs are entitled to enhanced damages and their attorneys' fees and costs incurred herein.

**WHEREFORE,** Plaintiff prays for judgment against the individual Defendants as more fully set forth below.

**EIGHTH CAUSE OF ACTION**

**(False Designation of Origin under 15 U.S.C. §1125(a))**

104.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this Complaint.

105.    This is a claim for false designation of origin arising under 15 U.S.C. § 1125(a)

106.    Without Plaintiff's consent, Defendants have created and will continue to create a false designation of origin by using in commerce, images and information that are confusingly similar to images and information about Plaintiff's STACS® device in connection with the advertising of Defendants' alleged SCS700 device, by falsely marketing their system as equivalents of Plaintiff's STACS® systems, and by continuing to offer Plaintiff's STACS®

- 20 -

COMPLAINT

1    systems for sale, thereby causing a likelihood of confusion, mistake or deception as to an

2    affiliation, connection or association with Plaintiff or to falsely suggest Plaintiff as the origin of

3    the services or that Plaintiff has sponsored or approved Defendants' commercial activities.

4          107.   Plaintiff is informed and believes, and on that basis alleges, that Defendants did

5    so with the intent to compete against Plaintiff, to trade upon Plaintiff's reputation and goodwill

6    by causing confusion and mistake among customers and the public, and to deceive the public

7    into believing that Defendants and/or their devices and services are associated with, sponsored

8    by, originated from, or are approved by Plaintiff, when in truth and fact they are not.

9          108.   By their actions, Defendants have injured and violated the rights of Plaintiff and

10   damaged Plaintiff in an amount to be determined at trial.

11         109.   By their actions, Defendants have irreparably injured Plaintiff. Such irreparable

12   injury will continue unless and until Defendants are preliminarily and permanently enjoined by

13   this Court from further violation of Plaintiff's rights.

14

15                              **NINTH CAUSE OF ACTION**

16                **(Breach of Fiduciary Duty Against Defendant Jan Solomon)**

17         110.   Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this

18   Complaint.

19         111.   Defendant Jan Solomon has a 25% membership interest in ADCOM, and as Ms.

20   Solomon's proxy, Defendant Alex Solomon is a de facto member of ADCOM in place of Ms.

21   Solomon.  Plaintiff placed the greatest confidence and trust in Ms. Solomon as a member of

22   ADCOM, and in Mr. Solomon as a de facto member of ADCOM by Ms. Solomon's proxy.

23         112.   In 2007, ADCOM granted STS the right to be an exclusive reseller/distributor

24   and licensee in the STACS® system and services under a Reseller Agreement, which was a

25   significant investment in STS by ADCOM at the sacrifice of other distribution channel

26   opportunities.   Under the Reseller Agreement, STS agreed to use its resources to solicit,

27   support, and respond to potential market and customer opportunities on behalf of ADCOM, and

28   STS would receive 25% of the sales revenue from each STACS® system sold.

                                        - 21 -

113.    In placing the greatest confidence and trust in Defendants Mr. Solomon and Ms. Solomon, Plaintiff gave Mr. Solomon direct access in confidence to ADCOM's trade secrets and other of ADCOM's confidential information in furtherance of business efforts pursuant to the agreement.  In turn, Defendant Jan Solomon owed ADCOM fiduciary obligations to deal fairly, justly and honestly with Plaintiff, not to allow use or to communicate information given to Mr. Solomon in confidence by Plaintiff or acquired during the course of Plaintiff's relationship with STS, to be loyal to the interests of Plaintiff and to place Plaintiff's interests before her own interests.

114.    Plaintiff fulfilled all of its fiduciary duties to Defendant Jan Solomon.

115.    Ms. Solomon breached the fiduciary duties that she owed to Plaintiff and that she willingly undertook by, inter alia:

a.    Placing her own interests ahead of the interests of Plaintiff;

b.    Allowing her husband and proxy Defendant Alex Solomon to convert and misappropriate Plaintiff' valuable proprietary information and trade secrets in the form of the STACS® firmware images, STACS® demonstration units, and STACS® operational know-how; to steal Plaintiff's design in STACS® to produce the SCS700;to exploit Plaintiff's design in STACS® for her own benefit and the benefit of her company Defendant STS without providing credit or compensation to Plaintiff; to engage in deceptive behavior alleging in e-mails from Defendant Alex Solomon to prospective customers that STS can "provide STACS® but just can't call it STACS®," and instructing a resale customer to "change the name" of a STACS® unit to obscure the device's STACS® origin; and to continue to use ADCOM's proprietary firmware, refusing to relinquish ADCOM's STACS® units systems in their possession after the termination of any authorization by ADCOM use them, attempting to sell them, and redirecting the communications of existing STACS® units previously sold to ADCOM's existing clients to communicate with Defendants' systems; and

c.    By concealing her scheme from Plaintiff and the acts taken in furtherance of the scheme.

- 22 -

1    116.   As a direct and proximate result of Defendant Jan Solomon's breach of fiduciary
2  duties, Plaintiffs have been damaged in an amount to be proven at trial.

3    117.   The wrongful conduct of Defendant Jan Solomon was willful, oppressive,
4  fraudulent, and malicious.  Plaintiffs are therefore entitled to punitive damages according to
5  proof at trial.

6                              **TENTH CAUSE OF ACTION**

7            **(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.*)**

8    118.   Plaintiff hereby incorporates by reference all of the foregoing paragraphs of this
9  Complaint.

10    119.   Defendants Morgan Hoaglin and Daniel Zubey, with knowledge and consent of
11  all Defendants, and in furthering the conspiracy amongst them, intentionally and without
12  authorization accessed the protected computing system within ADCOM's STACS®
13  demonstration unit in order to obtain configuration information from the device's system
14  configuration files, and to damage the device by modifying its configuration.

15    120.   Defendants Morgan Hoaglin and Daniel Zubey, with knowledge and consent of
16  all Defendants, and in furthering the conspiracy amongst them, knowingly and intentionally
17  used one of ADCOM's STACS® units to access, without authorization, Plaintiff's protected
18  head-end server computer to make telephone calls to prospective customers, obtaining
19  telephone service from Plaintiff's protected computer.  Hoaglin and Zubey knowingly and
20  intentionally caused the SCS700 device to attempt unauthorized access to Plaintiff's protected
21  head-end server computer.

22    121.   Defendants Hoaglin's and Zubey's actions with respect to Plaintiff's protected
23  computer system in the STACS® device, and to Plaintiff's protected head-end server computer,
24  constitute actions that were without authorization or exceed authorization.

25    122.   Defendants Hoaglin and Zubey intentionally accessed a computer without
26  authorization, or exceeded authorized access, and obtained information from a protected
27  computer in violation of 18 U.S.C. §1030(a)(2)(C).

28    123.   Defendants Hoaglin and Zubey knowingly and with intent to defraud, accessed

- 23 -

COMPLAINT

1    one of more of Plaintiff's protected computers without authorization, or exceeded authorized
2    access, and by means of such conduct furthered the intended fraud and obtained valuable
3    telephone or internet access and connectivity, and valuable system configuration information, in
4    violation of 18 U.S.C. §1030(a)(4).

5        124.    Defendants Hoaglin and Zubey intentionally accesses a protected computer
6    without authorization, and as a result of such conduct, caused damage and loss in violation of of
7    18 U.S.C. §1030(a)(5)(C).

8        125.    Plaintiff is informed and believes, and on that basis alleges, that Defendants did
9    so with the intent to interfere with Plaintiff's relationship with existing and prospective
10   customers, and to mislead Plaintiff's existing and prospective customers on the operability of
11   Defendants' alleged new SCS700 device.

12       126.    Defendants, by Defendant Hoaglin's actions in violation of 18 U.S.C.
13   §1030(a)(2)(C), (a)(4), and (a)(5)(C), have caused Plaintiff to incur losses, including lost profits,
14   loss and damage to one or more of Plaintiff's protected computer systems, and loss to Plaintiff's
15   reputation and goodwill, in excess of five thousand dollars ($5000.00) during a one-year period
16   in violation of 18 U.S.C. §1030(g) and 18 U.S.C. §1030(c)(4)(i)(I).

17       **WHEREFORE,** Plaintiff prays for judgment against the individual Defendants as more
18   fully set forth below.

19
20                              **PRAYER FOR RELIEF**

21       **WHEREFORE,** Plaintiff prays judgment against Defendants as follows:

22       1.    For damages, in the amount of the fair value of Defendants' unjust enrichment
23             caused by the misappropriation of trade secrets, or for a reasonable royalty
24             payment therefor, pursuant to Civil Code section 3426.3;

25       2.    For damages, in an amount to be proven at trial, including but not limited to the
26             value of lost profits and lost business opportunity to sell and market Plaintiff's
27             STACS® systems and services, as a result of Defendants' wrongful acts, and that
28             the amount of profits realized by Defendants by reason of its unlawful acts be

                                        - 24 -
                                      COMPLAINT

1    trebled, as provided by law pursuant to Section 35 of the Lanham Act, 15 U.S.C.

2    § 1117;

3    3.   For disgorgement of that portion of the profits earned by Defendants in the sale,

4         licensing and services related to the SCS700 or other similar communication

5         system derived from the STACS® system;

6    4.   For punitive and exemplary damages;

7    5.   For prejudgment interest on all amounts claimed;

8    6.   For attorneys' fees and costs of suit incurred herein;

9    7.   For an injunction during the pendency of this action and thereafter an injunction

10        permanently prohibiting the Defendants from copying the STACS® system, or

11        making, having made, distributing, selling or offering to sell any

12        communications system that is confusingly similar to the STACS® system;

13   8.   For an injunction during the pendency of this action and thereafter an injunction

14        permanently prohibiting the Defendants from accessing any protected computer

15        of ADCOM in violation of 18 U.S.C. §1030, *et seq.*;

16   9.   For an injunction during the pendency of this action and thereafter an injunction

17        permanently prohibiting the Defendants from using any proprietary or

18        confidential information, or trade secret, of ADCOM;

19   10.  For Defendants to return and deliver all STACS® devices in their possession to

20        ADCOM;

21   11.  For Defendants to cease use of and to destroy all STACS® firmware or software

22        in their possession;

23   12.  For such other and further relief as the Court may deem proper.

24   Dated: December 8, 2014            NIXON PEABODY LLP

25                                    By

26                                       Gregory P. O'Hara
                                         Jeffrey J. Lokey
27                                       Rhys W. Cheung
                                         Attorneys for Plaintiff
28                                       ADCOM TECHNOLOGIES LLC

- 25 -

COMPLAINT

1

2

3

## DEMAND FOR A JURY TRIAL

4

Plaintiff ADCOM hereby demands trial by jury on all issues raised in the Complaint.

5

Dated: December 8, 2014                      NIXON PEABODY LLP

6

7                                            By _____
                                                Gregory P. O'Hara
8                                               Jeffrey J. Lukey
                                                Rhys W. Cheung
9                                               Attorneys for Plaintiff
                                                ADCOM TECHNOLOGIES LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -

**COMPLAINT**

# EXHIBIT A

June 28, 2007

Mr. Alex Solomon
President
Solomon Technology Solutions
15721 N. Greenway Hayden Loop
Scottsdale, Arizona 85260

Dear Alex:

This document will confirm our verbal agreement appointing Solomon Technology as exclusive Sales & Marketing agent for ADCOM Technologies. Solomon will use its resources to solicit, support, and respond to potential market and customer business opportunities on behalf of ADCOM. Solomon will receive a 25% of the sale price for each STACS unit sold through Solomon. In addition, ADCOM grants Solomon the license to use the STACS Technology to enhance its business interests with existing and registered customers. ADCOM reserves the right to review and decline any registered customer(s) proposed by Solomon. ADCOM waives any compensation as a result of sales of Solomon's registered customers. ADCOM can terminate the terms and conditions disclosed above with 30 days notice and Solomon agrees that ADCOM will be indemnified from any liability whatsoever as a result of Solomon's termination.

Sincerely,

R. Cioffi

Ron Cioffi
Manager
ADCOM Technologies

Xc: Dean Franks as Member
    Mike Lindsey as Member

# EXHIBIT B

**ADCOM/STACS PAYABLES**
COGS-Q3 Projection

| | STACS Sales Price | ADCOM 75% | SYS 25% | | STACS Components | |
|---|---|---|---|---|---|---|
| Worcester Fire Department- Mark Cady | $ 50,000.00 | $ 37,500.00 | $ 12,500.00 | | | |
| Fisher Scientific | $ 45,900.00 | $ 34,425.00 | $ 11,475.00 | | | |
| ADEM (1st Unit delivered) | $ 49,199.00 | $ 36,899.25 | $ 12,299.75 | | | |
| Mass Dept of Fires Services (HAZMAT) | $ 61,380.00 | $ 46,035.00 | $ 15,345.00 | | | |
| ADEM (remaining 5 units) | $ 237,995.00 | $ 178,496.25 | $ 59,498.75 | | | |
| STACS Components | | | | | $ 42,500.00 | 10 Units |
| STACS Labor | | | | | $ 40,000.00 | 10 Units |
| STACS Consulting | | | | | $ 36,000.00 | Lobby 2009 |
| | | | | | $ 14,000.00 | Consultant |
| Mesa | | | | | $ 6,000.00 | Rent/Expenses |
| | ADCOM 75% | $ 333,355.50 | | | | |
| | Less: ADCOM Advances | $ (203,332.54) As of 8/5/09 | | | . | |
| | **Total Due ADCOM** | **$ 130,022.96** | | | **$ 138,500.00** $ (8,477.04) | |
| STACS Pending Orders | $ 15,000.00 | $ 11,250.00 | $ 3,750.00 | GDIT | | |
| Q3 Deliverables | $ 100,000.00 | $ 75,000.00 | $ 25,000.00 | Georgia | | |
| | $ 60,000.00 | $ 45,000.00 | $ 15,000.00 | ADEM | | |
| | $ 60,000.00 | $ 45,000.00 | $ 15,000.00 | Louisiana | | |
| | $ 40,000.00 | $ 30,000.00 | $ 10,000.00 | ATSC | | |
| | ADCOM 75% | $ 306,272.96 | | | | |
| | Less: ADCOM Advances ADCOM Commissions | $ (13,250.00) | | | | |
| | **Total Due ADCOM** | **$ 293,022.96** | | | **$ (8,477.04)** $ 284,545.92 | |

I still have an open purchase order for GMPCS for 4 BGAN units dated 4/30/09.
Don't know if you or Dean ever rec'd them, and I've never rec'd an invoice
Total is $5398 and is NOT part the above advances
(INCLUDED IN ABOVE)

# EXHIBIT C

**ADCOM Technologies**
*"Simple Not Simpler"*

Date:       April 9, 2014

To:         Solomon Technology Solutions

From:       Dean Franks as ADCOM Principal

Subject:    Temporary Rules of Engagement (TRE)

Alex,

We have had 2 discussions on or about April 8 and most recently on April ___. As discussed the relationship with Solomon (STS) will require close monitoring based on the outcome of pending litigation coupled with the financial condition of STS. We are not in a position today to enter into any agreement at this time and are only able to offer Temporary Rules of Engagement (TRE) to support our representatives and customers. The TRE should not be considered in any respects as a contract or commitment that will lead to an agreement. Importantly, the TRE does not provide STS with any authority whatsoever to make any representations regarding STACS® on behalf of ADCOM. The following TRE can be discontinued by either party upon notice by any reasonable means of communication. It is agreed that either party will have no liability to the other upon the termination of the TRE.

1. ADCOM's primary technical contact at STS will be Morgan. Both Ron and I will interface on an as needed basis with Morgan. We will be available to STS on an as needed basis.
2. Manufacturing will immediately transition to ICO RALLY for a variety of reasons primarily that we can garner their attention, their certifications, and strong credit rating. ADCOM may grant permission to STS on a case by case basis to assemble STACS® equipment. ADCOM will supply and absorb material cost.
3. STS will act as a representative and will immediately transition resellers to place orders through ICO RALLY. ICO RALLY is prepared to accept the existing terms in current outstanding Reseller Agreements. Any deviation will require pre-approval.
4. STS will be entitled to 25% Commission based on agreed upon South America reseller pricing and Rest of World (ROW) defined as GSA Schedule 70 pricing. Any sub representatives to STS will be compensated by STS at STS's expense. STS will provide a letter authorizing ICO RALLY to use the Schedule. Any Schedule 70 STACS® sale through ICO RALLY which did not originate through STS will entitle STS to a 15% commission. Any sale directed by STS to ICO RALLY at (ROW) pricing will entitle STS to a standard 25% commission.
5. Unless special pricing is pre-approved by ADCOM any reduction in pricing will be absorbed by STS. Demo System pricing has been approved but each request requires approval by ADCOM. ADCOM's Material Cost Recovery (if any) & License Fee apply to any pre-approved Demo System.
6. Commissions will be paid to STS by either ADCOM or ICO RALLY upon receipt of payment within 10 days.
7. STS can continue to use the STACS® name and logo unless notified differently.
8. STS will provide a weekly funnel report

_____          _____
Alex Solomon                      Date

| | |
|---|---|
| **From:** | Cecil Dyer <cdyer@solomontech.com> |
| **Sent:** | Monday, June 16, 2014, 9:56 AM |
| **To:** | "dean franks@adcomllc. com" <dean.franks@adcomllc.com> |
| **Cc:** | "Ronald Cioffi" <ron.cioffi@adcomllc.com>, "Alex Solomon" <asolomon@solomontech.com>, "Terry Burns" <tburns@solomontech.com>, "Melody Yahrmarkt" <myahrmarkt@solomontech.com>, cdyer@solomontech.com, "Morgan Hoaglin" <mhoaglin@solomontech.com> |
| **Subject:** | FW: TRE Agreement and compliance |
| **Attachments:** | ADCOM_STS_TRE_4_9_2014_1.pdf |

Dean,

Please see attached, email string. Per Alex, Solomon agrees to the TRE. Call me if you need to.

I'm sure we will need to work through details of transition.

Respectfully,
Cecil

From: Alex Solomon [mailto:asolomon@solomontech.com]
Sent: Monday, June 16, 2014 11:54 AM
To: Cecil Dyer
Subject: Re: TRE Agreement and compliance

Agree...

Best Regards,

Alex

Alex Solomon
Owner/Founder

1

# EXHIBIT D

| | |
|---|---|
| **From:** | Dean Franks <dean.franks@gmail.com> |
| **Sent:** | Tuesday, August 05, 2014 10:21 AM |
| **To:** | "Morgan Hoaglin" <mhoaglin@solomontech.com> |
| **Cc:** | "Alex Solomon" <asolomon@solomontech.com>, "Ronald Cioffi" <rcioffi@sbcglobal.net> |
| **Subject:** | Formal notification |

Morgan,

Please destroy all copies of the STACS compact flash firmware Image In your possession.

Thanks,

Dean

1

# EXHIBIT E

## Arizona Corporation Commission
## State of Arizona Public Access System

12/03/2014

7:12 PM

| Pending File Inquiry | |
|---|---|
| File Number: N-1941523-8 | Reservation Number: 105212 |
| Corporation Name: SOLOMON COMMUNICATION SYSTEMS, LLC | |

| | |
|---|---|
| Designation Type: | NAME RESERVATION |
| Pending Type Code: | APPROVED |
| Location Code: | PHOENIX |
| Date Received: | 07/30/2014 |
| Approval Date: | 08/01/2014 |
| Date Returned: | |
| Reason Returned: | |
| Corp Type: | DOMESTIC L.L.C. |
| Expedited Date: | |
| Expiration Date: | 11/28/2014 |

### Contact Information

```
BUNTROCK LAW GROUP PLLC
2158 N GILBERT RD
STE 119
MESA,   AZ  85203
```

### Comments

CORPORATE IDENTIFIER(S) NOT VALID FOR CORPORATION TYPE

- STARPAS Main Menu
- A.C.C. Corporations Division Main Page
- Arizona Corporation Commission Home Page

Ariz. Corp. Comm. -- Corporations Division

12/3/2014

# EXHIBIT F



My Account ▾ | NSN Ordering ▾ | Get Quotes ▾ | i Help | Register | Login



A service of the U.S. General Services
Administration

| Shop by Category ▾ | **Search** | Products | solomon technology solutions inc. | | Go | Advanced | 0 |

Home › Search Results

## Categories

**Building &
Industrial**
Power supply units

**Electronics &
Technology**
Lithium batteries
Flash memory
Wireless network
interface cards

**Facilities &
Supplies**
Air freshener

Manufacturers/Brands

EXINDA
SOLOMON
TECHNOLOGY
SOLUTIONS, ...
MARBLE LIFE
PROCTER &
GAMBLE
DUCKBACK PROD.

- See all

Photos
- See only items with
  photos

Contractors
- See All

Business/Socio-
economic Types
- Small Business
- SBA cert
  disadvantaged SB
- Svc disabled vet
  owned SB
- SBA cert 8(a) firm

Green/Special
Programs
Disaster Recovery
items
Cooperative

Search Results - Products

Found 53 products matching the following criteria.

See Services Results »
Go to Consolidated View » ☕

Criteria: " solomon technology solutions inc. "

| Sort by | Limit by price | Search within results |
|---|---|---|
| Most relevant ▾ | ------ ------ ▾ | |

Find any of these words ▾   GO

1 | 2 | 3 | Next Page >



**STACS-100EP** ⊠
STACS-100EP

**$6,840.93** EA
30 days delivered ARO
From 2 sources

Extended 3-Year Warranty

**Mfr:** SOLOMON TECHNOLOGY
SOLUTIONS, INC.

**Contractor:** SOLOMON
TECHNOLOGY SOLUTIONS,
INC. [GS-35F-0051S] ( s d 8a )



**STACS-100 EP** ⊠
STACS-100 EP

**$40,803.75** EA
30 days delivered ARO
From 2 sources

STACS 100EP is our Executive
Package. All components are in
one (1) roll around, carry-on
airline approved case.'Smart
Tactical Advanced
Communication Syst
em" (STACS) is a Portabl...

**Mfr:** SOLOMON TECHNOLOGY
SOLUTIONS, INC.

**Contractor:** SOLOMON
TECHNOLOGY SOLUTIONS,
INC. [GS-35F-0051S] ( s d 8a )

Purchasing Items

Shipping

[ -- show all -- ▾ ]

GO

Minimum Order

[ show all - ▾ ]

GO

Can't find what you're looking for?
Call GSA Customer Service toll free at **800-488-3111**
Available 24 hours a day
Monday - Friday
(8 AM Central Sunday through 8:30 PM Central Friday)



**STACS-100PP** ⚡
STACS-100PP

**$8,795.48** EA
30 days delivered ARO
From 2 sources

Extended 3-Year Warranty

**Mfr:** SOLOMON TECHNOLOGY SOLUTIONS, INC.

**Contractor:** SOLOMON TECHNOLOGY SOLUTIONS, INC. [GS-35F-0051S] ( s d 8a )

**STACS-100 PP** ⚡
STACS-100 PP

**$52,651.95** EA
30 days delivered ARO
From 2 sources

STACS 100PP is our Professional Package. All components are in two (2) roll around, carry-on airline approved cases."Smart Tactical Advanced Communication System" (STACS) is a Port...

**Mfr:** SOLOMON TECHNOLOGY SOLUTIONS, INC.

**Contractor:** SOLOMON TECHNOLOGY SOLUTIONS, INC. [GS-35F-0051S] ( s d 8a )



**STACS-100 SP** ⚡
STACS-100 SP

**$55,009.50** EA
30 days delivered ARO
From 2 sources

STACS 100SP is our Stationary Package with a fixed plant configuration. All components are mounted in a 19" equipment rack."Smart Tactical Advanced Communi cation System" (STACS) i...

**Mfr:** SOLOMON TECHNOLOGY SOLUTIONS, INC.

**Contractor:** SOLOMON TECHNOLOGY SOLUTIONS, INC. [GS-35F-0051S] ( s d 8a )

**STACS-100SP** ⚡
STACS-100SP





$8,795.48 EA
30 days delivered ARO
From 2 sources

Extended 3-Year Warranty

Mfr: SOLOMON TECHNOLOGY
SOLUTIONS, INC.

Contractor: SOLOMON
TECHNOLOGY SOLUTIONS,
INC. [GS-35F-0051S] ( s d 8a )



### GLADE TOUGH ODOR SOLUTIONS SPRAY WITH OD
INC613063

$3.67 EA
10 days delivered ARO
From 7 sources

Glade Tough Odor Solutions
spray with odor fighting
technology fights even the
toughest cooking, pet, and
bathroom odors without masking.
No. 71497: Clear Springs No.
71499: Refres...

Mfr: JOHNSON S C INC

Contractor: VETERAN
LOGISTICS INC. (SDVOSB)
[GS-21F-0094W] ( s dv )





### SAFELY ELIMINATES ODOR ON FABRICS, SPRAY
INC603651

$6.95 EA
10 days delivered ARO
From 3 sources

Safely eliminates odor on fabrics.
Spray contains a unique scent-
release technology for long lasting
clean. Eliminates pet, smoke,
cooking, and musty odors. Spray
fabric evenly unt...

Mfr: PROCTER & GAMBLE

Contractor: VETERAN
LOGISTICS INC. (SDVOSB)
[GS-21F-0094W] ( s dv )





### MAXOUT TILE & GROUT DEEP CLEANER IS A SP
INC615315

$10.35 EA
10 days delivered ARO
From 3 sources

MaxOut tile & grout deep cleaner
is a specifically designed
formulation that emulsifies
stubborn grease and dirt from
your grout. Will not harm ceramic